UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
MARISHA CLINTON,                    :
                                    :
                                    :
            Plaintiff,              :      REPORT & RECOMMENDATION
                                    :
         -against-                  :      10 CV 3286 (JSR)(MHD)
                                    :
OPPENHEIMER & CO. INC.,             :
                                    :
                                    :
            Defendant.              :
------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/17/11
```

**TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:**


     Pro se plaintiff Marisha Clinton ("Clinton") commenced this

action on April 19, 2010 against defendant Oppenheimer & Co., Inc.

("Oppenheimer"), pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C, §§ 2000e-2000e17, and the Equal Pay Act, 29 U.S.C.

§ 206. Plaintiff alleges that defendant discriminated against her

and discharged her from her employment based upon her race and her

gender. She seeks damages and injunctive relief.


     In response, Oppenheimer has moved to compel arbitration and

to stay the case during its pendency. Clinton opposes the motion

and further requests that the court enter a default judgment based

on her contention that defendant failed to respond timely to the

complaint. For the reasons that follow, we recommend that defendant's motion to compel arbitration be granted and plaintiff's motion for a default judgment be denied.

I.   Background

Clinton began working for Oppenheimer on or about July 8, 2008 as a Director of Equity Research. (Pl.'s Cmplt., Particulars in Support of EEOC Charge ("Particulars in Support") ¶ 2, Mar. 15, 2010). When commencing her employment, she signed an arbitration agreement dated July 3, 2008. (Decl. of Barry S. Gold, Esq. ¶ 2 & Ex. B, Oct. 27, 2010). The pertinent portion of the arbitration agreement reads:

> I agree that any dispute, controversy or claim which I have arising out of or relating to my employment or separation of employment, including alleged violation of state or federal civil rights acts (including but not limited to all claims of discrimination, harassment and/or retaliation under such statutes as. . . Title VII of the Civil Rights Act of 1964). . . shall be arbitrated before the National Association of Securities Dealers (NASD).

2

(Id. at Ex. B).[1]

On December 22, 2008, plaintiff received a formal written reprimand which listed seven areas for improvement and warned her that she could be terminated if she failed to demonstrate improvement. (Cmplt., Ex. A). One month later, plaintiff underwent an annual performance review and received another written reprimand, which repeated the seven areas for improvement and the warning regarding termination. (Cmplt., Ex. B). On March 3, 2009, plaintiff was terminated from her employment. (Particulars in Support, ¶ 33).

Plaintiff filed a complaint with the Equal Employment Opportunity Commission on May 25, 2009, alleging discrimination by Oppenheimer on the bases of race and gender. On December 16, 2009, the EEOC notified plaintiff that it was unable to conclude that Oppenheimer had engaged in illegal discrimination, and it provided her with right-to-sue materials.

---

[1]In July of 2007, NASD changed its name to the Financial Industry Regulatory Authority, or "FINRA," and the dispute-resolution section of the NASD was consolidated with the dispute-resolution section of the New York Stock Exchange. See NASD and NYSE Member Regulation Combine to Form the Financial Industry Regulation Authority - FINRA, http://www.finra.org/Newsroom/NewsReleases/2007/p036329/2007/p036329.

II.  Discussion


    A.    Standard of Review for Motion to Compel Arbitration


    Before addressing defendant's motion to compel, we summarize

the pertinent standards for assessing such a motion. The Second

Circuit has held that "[i]n the context of motions to compel

arbitration brought under the Federal Arbitration Act . . . the

court applies a standard similar to that applicable for a motion

for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175

(2d Cir. 2003) (citing cases). See, e.g., DuBois v. Macy's East,

Inc., 338 Fed. Appx. 32, 33 (2d Cir. 2009) (applying summary-

judgment standards to a motion to compel arbitration, and noting

that to defeat such a motion, the party opposing arbitration must

show a genuine factual dispute about the validity of an arbitration

agreement); Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362,

368 (2d Cir. 2003).


    The court may enter summary judgment only if it concludes that

there is no genuine dispute as to the material facts and that,

based on the undisputed facts, the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a) (formerly Rule

56(c)); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

4

(1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth. of the City of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the "materials in the record, including depositions, documents, electronically stored information, affidavits, stipulations . . . or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of

5

Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet its initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 161 (1970); Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003).

If the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot rest merely on allegations or denials of the factual assertions of the movant, Fed. R. Civ. P. 56(e), nor can she rely on her pleadings or on merely conclusory factual allegations. Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), See, e.g., Goldstein v. Hutton,

6

Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). She must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, she must present specific evidence in support of her contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994). In other words, she must demonstrate that there is sufficient evidence for a reasonable jury to find in her favor. Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 455-56 (2d Cir. 2007) (citing Anderson, 477 U.S. at 249). See also DuBois, 338 Fed. Appx. at 33 (explaining that once the party seeking arbitration has submitted the required evidentiary facts proving the existence of the arbitration agreement, the opposing party must show "that there is a dispute of fact to be tried") (quoting Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)).

We note that, as a general matter, we must take care to construe a pro se litigant's papers liberally, in deference to her

7

pro se status. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir.
1988) (affording "special solicitude" to pro se litigants
"confronted with motions for summary judgment"); Salahuddin v.
Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (noting that pro
se litigants are to be given "special latitude on summary judgment
motions") (internal quotation marks omitted) (quoting Reyes v.
Koehler, 815 F. Supp. 109, 112 (S.D.N.Y. 1993)). Accordingly, we
interpret a pro se litigant's papers to "raise the strongest
arguments that they suggest." Pabon v. Wright, 459 F.3d 241 (2d
Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.
1994). This does not, however, "relieve plaintiff of [her] duty to
meet the requirements necessary to defeat [or to prevail on] a
motion for summary judgment." Jorgensen v. Epic/Sony Records, 351
F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).


B.   Assessment of Defendant's Motion


Clinton does not dispute that she signed the arbitration
agreement when she was hired. She contends that she should not be
compelled to arbitrate because (1) her employment was conditioned
upon her signing a pre-dispute arbitration agreement, thus
reflecting an inequality of bargaining power and rendering the
arbitration agreement unlawfully coercive; (2) arbitration

8

agreements, particularly pre-dispute arbitration clauses in employment contracts, deprive employees of federal civil rights; (3) mandatory arbitration agreements are unenforceable as to Title VII claims; and (4) the FINRA rules of arbitration exclude statutory-discrimination claims.

1. <u>Federal Policy Favors Arbitration</u>

The Federal Arbitration Act ("FAA") states in relevant part that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of the contract." 9 U.S.C. § 2. The Supreme Court has often noted that this provision demonstrates a "federal policy favoring arbitration." <u>See</u> <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24 (1983); <u>see also</u> <u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 226 (1987) (quoting 9 U.S.C. §§ 3-4, which provides for stays of proceedings when an issue is "referable to arbitration" and for orders compelling arbitration where one party "has failed, neglected, or refused to comply with an arbitration agreement").

The Second Circuit has held that a "broad arbitration clause," such as the one at issue in this case, where parties agree to arbitrate any dispute relating to employment or its termination, "justifies a presumption of arbitrability." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (citing cases). Furthermore, the Supreme Court has held that the duty of courts "to enforce arbitration agreements is not diminished when a party bound by an arbitration agreement raises a claim founded on statutory rights." Shearson, 482 U.S. at 226.   The FAA mandate may be overridden, however, if the party opposing arbitration can show that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Id. at 226-27 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

The language of the arbitration agreement at issue here clearly evidences the parties' intention that disputes arising under Title VII be submitted to arbitration; indeed, it specifically references Title VII claims as included under the terms of the agreement. (See Gold Decl. Ex. B).   Thus, the burden is on Clinton to demonstrate that the arbitration agreement is revocable or otherwise invalid, or that Congress intended to preclude Title VII claims from arbitration. See, e.g., Hines v. Overstock.com, Inc., 380 Fed. Appx. 22, 23 (2d Cir. 2010)

10

(describing the burden of the party opposing arbitration as "putting the making of [the] agreement [to arbitrate] 'in issue'"); Rothstein v. Fung, 2004 WL 1151568, *1 (S.D.N.Y. May 14, 2004) (stating that, once defendant proves written arbitration agreements obligating the parties to arbitrate, plaintiff has the burden of demonstrating a "'substantial issue' of fact as to whether these are binding agreements") (quoting Blatt & Blatt v. Shearson Lehman/American Express Inc., 1985 WL 2029, *2 (S.D.N.Y. July 16, 1985)).

> (2). Inequality of Bargaining Power Does Not Invalidate the Agreement

In analyzing the validity of the arbitration agreement, we look to New York law[2], see Adams v. Suozzi, 433 F.3d 220, 227 (2d Cir. 2005) (applying state-law principles when an FAA case involves a question of contract formation), on which basis we must first resolve plaintiff's claim of unconscionability. See Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 121 (2d Cir. 2010); Cap Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d 360,

---

[2] Although the arbitration agreement does not include a choice-of-law provision, it refers specifically to New York state law. (Gold Decl. Ex. B). Additionally, both plaintiff and defendant are New York residents. Therefore, New York law is the appropriate source for analyzing the state-law elements of this motion.

365 (2d Cir. 2003) ("It is clear that questions of contractual validity relating to unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA") (citing cases).

Arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under New York law, a contract may be held invalid if it meets the standard for unconscionability -- that is, if it "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, (1988). For a contract to be held unconscionable, the party alleging the defect must generally show both substantive and procedural unconscionability. See Nayal v. HIP Network Services IPA, Inc., 620 F. Supp.2d 566, 571 (S.D.N.Y. 2009) (citing cases); Sands Bros. Venture Capital, LLC v. Burrs, Schoenberg & Walden, LLP, 2010 WL 3619861 (N.Y. Sup. Ct. Sept. 14, 2010). That is, the contract must unreasonably favor one party over the other and the process of contract formation must have deprived the disadvantaged party of meaningful choice. See King v. Fox, 7 N.Y.3d 181, 191, 818 N.Y.S.2d 833, 840 (2006)

(citing <u>Gillman</u>, 73 N.Y.2d at 10, 537 N.Y.S.2d at 791).

Plaintiff contends, and defendant does not dispute, that her employment by defendant was conditioned upon her signing an arbitration agreement. We take her argument to be that this constitutes procedural unconscionability because defendant had "all the bargaining power" and her only option was "to agree to the [defendant] employer's terms." (Affirmation of Marisha L. Clinton in Opp'n to Def.'s Mot. to Compel Arbitration ("Clinton Aff.") ¶ 3, Nov. 10, 2010).

In response to the contention that arbitration agreements should not be enforced because of unequal bargaining power in employment relationships, the Supreme Court has held that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 33 (1991). Furthermore, "[i]t is well settled. . . that conditioning employment on the acceptance of an agreement to arbitrate disputes, including those arising under civil rights laws, is not itself unlawfully coercive." <u>Williams v. Parkell Products, Inc.</u>, 91 Fed.Appx. 707, 708-09 (2d Cir. 2003) (citing <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 123 (2001), and

Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 204-05 (2d Cir. 1999)); see also Ragone, 595 F.3d at 121 ("the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration"); Gold, 365 F.3d 144, 149-50 (holding that plaintiff employee had a legal responsibility to read carefully the arbitration agreement that he was required to sign for his employment and to raise his concerns before signing it).

Such inequality in bargaining power may, when coupled with "high pressure tactics that coerce a signatory's acceptance of onerous terms," demonstrate a lack of meaningful choice. Brennan v. Bally Total Fitness, 198 F. Supp.2d 377, 382 (S.D.N.Y. 2002). Such improper tactics may included pressuring the prospective employee to sign the agreement without reading it, refusing to let her review the agreement with an attorney, or deceiving her as to its content. Nayal, 620 F. Supp.2d at 572. Clinton, however, alleges no such tactics, and there is no evidence to support such an accusation. Furthermore, Clinton is an educated business person with extensive experience in her field (Particulars in Support, ¶¶ 11-13) -- hardly the "prototypical 'uneducated' and 'needy' individual for whom the unconscionability doctrine was fashioned." Nayal, 620 F. Supp.2d at 573; see also Gold, 365 F.3d at 150.

14

In rare instances of outrageously unfair contractual language, substantive unconscionability alone may merit a finding of unconscionability. See Gillmann, 73 N.Y.2d at 12, 537 N.Y.S.2d at 793. Nonetheless, even agreements that "concededly favor" the party requesting arbitration are generally upheld when the advantage is not "grossly unreasonable." Rosenfeld v. Port Auth. of New York and New Jersey, 108 F. Supp.2d 156, 165 (E.D.N.Y. 2000); see also Forbes v. A.G. Edwards & Sons, Inc., 2009 WL 424146, *5 (S.D.N.Y. 2009) (finding an agreement not unconscionable where employer was not bound to arbitrate its disputes); Sablosky v. Edward S. Gordon Co., Inc., 73 N.Y.2d 133, 137, 538 N.Y.S.2d 513, 516 (1989) (holding that "[m]utuality of remedy is not required in arbitration contracts" as long as "there is consideration for the entire agreement that is sufficient," such as plaintiff's employment by defendant corporation).

In this case, plaintiff points to no provision in the agreement that favors Oppenheimer over her, and she does not advance any arguments that the terms are one-sided. Moreover, we find nothing in the arbitration agreement that unfairly promotes the interest of defendant at plaintiff's expense. In short, there is no basis in the record to find that the contract is substantively unconscionable, see, e.g., Anonymous v. JP Morgan

15

Chase & Co., 2005 WL 2861589, *6 (S.D.N.Y. Oct. 31, 2005); Nayal, 620 F. Supp.2d at 573 (declining to find substantively unconscionable an agreement which equally bound both parties to arbitration) (citing cases).

### (3) Plaintiff's Remaining Arguments

Plaintiff's remaining arguments for rejecting the arbitration agreement are intended to suggest that the provision is unconscionable or otherwise unenforceable. We readily reject her contentions on this point. First, she argues that compulsory arbitration would unfairly deprive her of her rights under federal law, including the right to a jury trial, the right to appeal, the right of access to the courts, and the right to recover full damages. (Clinton Aff. ¶ 3). The Supreme Court has made clear, however, that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Mitsubishi Motors Corp., 473 U.S. at 628; see also Circuit City Stores, 532 U.S. at 123 (2001); Gilmer 500 U.S. at 26. Furthermore, both the Second Circuit and New York

16

courts have held that language describing the arbitrator's decision as "final and binding" does not render such an agreement unconscionable because an arbitration award may still be reviewed by a court pursuant to a motion to vacate. Ragone v. Atlantic Video at Manhattan Center, 2008 WL 4058480, *5 (S.D.N.Y. Aug. 29, 2008), aff'd, 595 F.3d 115 (2d Cir. 2010). See also Greenwald v. Weisbaum, 6 Misc.3d 281, 288, 785 N.Y.S.2d 664, 670 (N.Y. Sup. Ct. 2004) (upholding an arbitration agreement providing for "conclusive and binding" arbitration where the agreement incorporated rules that contemplated very narrow judicial review). The arbitration agreement at issue expressly notes that, while "arbitration awards are generally final and binding," the parties have some ability, albeit a "very limited" one, to seek judicial review. (Gold Decl. Ex. B). The agreement therefore both fully alerted plaintiff to the consequences of arbitration and provided for the necessary judicial review.

Similarly, the lack of discovery or a jury trial does not render an agreement to arbitrate unconscionable. Indeed, such a rule would preclude the enforcement of pre-dispute arbitration agreements, a result that "would plainly be contrary to New York law, which incorporates a strong public policy favoring

17

arbitration." Id.; see also Harrington v. Atlantic Sounding Co., Inc., 602 F.3d 113, 126 (2d Cir. 2010) (stating that "courts may not 'rely on the uniqueness of an agreement to arbitrate,' which necessarily waives jury trial" to invalidate such an agreement) (quoting Perry v. Thomas, 492 U.S. 483, 492 n. 9 (1987)); Bar-Ayal v. Time Warner Cable Inc., 2006 WL 2990032, *16 (S.D.N.Y. Oct. 16, 2006).

The agreement is also not voidable on the basis, as plaintiff contends, that the FINRA Rules do not encompass arbitration of a Title VII claim. To the contrary, those rules, which would govern arbitration of this dispute, state that "[a] claim alleging discrimination. . . in violation of a statute, is not required to be arbitrated under the Code. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose." FINRA Rule 13201. (http://www.finra.org/Industry/regulations /FINRARules/) (emphasis added). Thus, the plain language of Rule 13201 makes clear that a statutory employment-discrimination dispute is arbitrable if the parties agreed either before or after the dispute arose. In the present case, the plain language of the arbitration agreement makes clear that the parties agreed, before any dispute arose, to

18

arbitrate any claims relating to employment, including complaints of discrimination. The FINRA rules also provide assurance of adequate remedies to a successful complaining party. Thus they state that in a statutory employment-discrimination case:

> The panel [of arbitrators] may award any relief that would be available in court under the law. The panel must issue an award setting forth a summary of the issues, including the type(s) of dispute(s), the damages or other relief requested and awarded, a statement of any other issues resolved, and a statement regarding the disposition of any statutory claim(s)."

FINRA MANUAL ONLINE § 13802(e) (2008), <u>available</u> <u>at</u> http://www.finra.org/Industry/regulations/FINRARules/.


### (4). <u>Arbitration Agreements are Enforceable as to Title VII Claims</u>

In view of the validity of the arbitration agreement, we are left with the question whether, as Clinton contends, Congress intended to preclude Title VII claims from arbitration. (Clinton Aff. ¶ 4). In making this argument, she relies on <u>Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 995 F.Supp. 190 (D.Mass. 1998), <u>aff'd</u>, 170 F.3d 1 (1st Cir. 1999), and <u>Duffield v. Robertson Stephens & Co.</u>, 144 F.3d 1182 (9th Cir. 1998). This argument cannot withstand scrutiny.

In affirming the district court's denial of a motion to compel arbitration, the First Circuit in Rosenberg expressly held that the "application of pre-dispute arbitration agreements to federal claims arising under Title VII. . . is not precluded," and it affirmed the denial of arbitration instead on the narrow ground that Merrill Lynch had failed to make reasonable efforts to inform plaintiff that employment disputes under Title VII were covered by the arbitration agreement. 170 F.3d at 4, 21. Plaintiff's use of Rosenberg is inapposite because the agreement that she signed stated expressly that all disputes, including Title VII claims, were to be arbitrated, unlike the agreement examined by the Rosenberg court. Moreover, the Second Circuit has "decline[d] to follow" Rosenberg because "[plaintiff's] failure to fully read and question [the arbitration agreement] before signing it undermines his claim. . . regardless of whether the rights he seeks to enforce spring from Title VII." Gold, 365 F.3d 144, 148-49.

The Ninth Circuit in Duffield held that, because of the legislative history of the 1991 Civil Rights Act -- which it interpreted as demonstrating Congress's intent to preclude compulsory arbitration of Title VII claims -- employees could not be required to waive their right to bring future Title VII claims in court as a condition of their employment. Duffield, 144 F.3d at

1189-90. The Second Circuit explicitly rejected this holding in Desiderio, 191 F.3d at 203-06 (2d Cir. 1999); see also Gold, 365 F.3d at 148; Mahon v. Staff Line Inc., 2003 WL 21396660, * 2 (S.D.N.Y. June 13, 2003), aff'd, 100 Fed. Appx. 37 (2d Cir. 2004). The Ninth Circuit as well has since "conclude[d] that [the] holding in Duffield was in error" because it was "inconsistent with the Supreme Court's endorsement of arbitration." E.E.O.C. v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742, 749-50 (9th Cir. 2003).

Indeed, the Second Circuit has repeatedly held, and Congress has declared, that Title VII claims are eligible for resolution under compulsory arbitration programs. See, e.g., Civil Rights Act, Pub. L. No. 102-166, § 118 (1991) (encouraging the use of alternative dispute resolution, including arbitration, to resolve disputes arising under federal employment-discrimination law); Desiderio, 191 F.3d at 204-06 (concluding that the Civil Rights Act of 1991 "evinces a plain Congressional purpose of encouraging arbitration of Title VII claims" and rejecting as irrelevant inconsistent legislative history because the language of the statute is clear); Mahon, 100 Fed. Appx. at 38 (rejecting plaintiff's argument that a pre-dispute mandatory arbitration agreement that includes Title VII claims is in itself a violation of Title VII); Gold, 265 F.3d at 148 (affirming that Title VII

claims are arbitrable under the FAA and the Civil Rights Act of 1991).

In pursuing this argument, plaintiff also invokes a piece of legislation titled the Arbitration Fairness Act of 2009, which she asserts provides that "no pre-dispute arbitration agreement shall be valid or enforceable if it requires arbitration of 1) an employment. . . dispute; or 2) a dispute arising under any statute intended to protect civil rights." (Pl.'s Notice of Opp'n, 1). This argument is misconceived, since the cited legislation is merely a congressional bill to amend the FAA and has not been enacted into law. See Library of Congress, Bill Summary & Status, 111th Congress (2009-2010), H.R. 1020, All Information (2010), a v a i l a b l e    a t    w w w . t h o m a s . g o v / c g i - bin/bdquery/z?d111:HR01020:@@@L&summ2=m&.   Thus, it has no legal effect.

Because we find that the parties signed a valid arbitration agreement that was not unconscionable or defective in any way and that plaintiff's discrimination claims fall within the scope of the agreement, we recommend that the District Court grant defendants' motion to compel arbitration and stay these proceedings pending arbitration.

C. Plaintiff's Request for a Default Judgment

Clinton argues as a separate matter that Oppenheimer failed to respond timely to her complaint, and she therefore seeks entry of a default judgment. (Clinton Aff. ¶ 9). For the reasons stated below, we recommend that plaintiff's motion be denied.

1.    Standard for Motion for Default Judgment

The Second Circuit has held that a "[s]trong public policy favors resolving disputes on the merits." Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). In determining whether to grant a motion for a default judgment under Fed. R. Civ. P. 55, "the court may consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or are in doubt." O'Callaghan v. Sifre, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2685 (3d ed. 1998)) (internal quotation marks and brackets omitted). We also consider "the same factors that apply to a motion to set aside entry of a default [under Rule 55(c)]: (1) whether the default was willful; (2) whether the plaintiffs would be prejudiced by the denial of the

23

motion for default judgment; and (3) whether there are any meritorious defenses to plaintiff's claims." Id. (citing Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001)). Additionally, the court may consider whether any "material issues of fact remain," the amount of money at issue, and "how harsh an effect a default judgment might have on the defendant." Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc., 655 F. Supp.2d 177, 186 (E.D.N.Y. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1988).

2.   Assessment of Plaintiff's Motion for Default Judgment

Plaintiff asserts, and defendants do not dispute, that Oppenheimer was served with the summons and complaint on September 15, 2010, thus beginning the 21-day period in which Oppenheimer was required to respond, which concluded on October 6, 2010. (Clinton Aff. ¶ 9). Because Oppenheimer did not file its motion to compel arbitration until October 28, 2010, plaintiff contends that she is entitled to a default judgment. (Id.). Plaintiff's argument is meritless.

24

Oppenheimer notes that upon reaching the decision that it would respond to the complaint by moving to compel arbitration, its counsel made several attempts to contact Clinton in order to arrange a pre-motion conference call with the Court -- all occurring before defendant's time to respond to the complaint had expired. (Gold Decl. ¶ 3). On September 27, 2010, defendant submitted a letter to the Court detailing the efforts that it had made to communicate with plaintiff, explaining the grounds for its proposed motion to compel arbitration, and alerting the Court that defendant's deadline to respond to the complaint was approaching. (Id. at ¶ 3 & Ex. C). Defendant followed up this letter with a telephone call to chambers and was instructed by the Court that the case would be set for conference and that no papers should be filed in the interim. (Id. at ¶ 4). The district judge then referred the case to me, and at the subsequent conference we specified a briefing schedule, with which defendant has fully complied. (Order, October 14, 2010).

In light of these facts, Clinton has failed to show that Oppenheimer acted improperly in failing to respond within the 21-day time period. In communicating with the district judge's chambers after its efforts to contact plaintiff had failed, Oppenheimer demonstrated a good-faith effort to comply with the

25

filing deadlines. Indeed, as a matter of equity, it would be particularly unfair to grant a default judgment to plaintiff when her unwillingness to return defendant's telephone calls -- to which she alludes in her opposition (Clinton Aff. ¶ 8) -- to discuss the case arguably caused the delayed briefing schedule.

Morever, as we have explained, Oppenheimer has shown a colorable defense in moving to compel arbitration. Furthermore, plaintiff was in no way prejudiced by the brief delay in receiving defendant's papers. Regardless of when defendant filed its motion, she would be required to arbitrate her claims, and she will still be afforded the opportunity to have her dispute adjudicated by a neutral third party, just as would be the case had defendant responded earlier than it did. In contrast, if a default judgment were entered, defendant would suffer the loss of contractual rights under the arbitration agreement and face a potentially large judgment, as plaintiff has calculated her damages at more than $167,000. (Cmplt., 4).

<u>Conclusion</u>

For the reasons stated, we recommend that the District Court grant defendant's motion to stay these proceeding and direct the

26

parties to proceed with the arbitration of plaintiff's case in accordance with the parties' arbitration agreement. We further recommend that plaintiff's request for a default judgment be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340 and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 470 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: New York, New York
       March 17, 2011


_____

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing report and recommendation have been sent today to:


By facsimile:

Barry S. Gold, Esq.
Fax: (212) 825-9828


And by mail:

Ms. Marisha Clinton
375 Linclon Plaza
#1D
Brooklyn, NY 11238